AO-106 (Rev: 06/09)-Application for Search Warrant

# UNITED STATES DISTRICT COURT

**FILED**

for the

NOV 21 2023

Northern District of Oklahoma

Mark C. McCartt, Clerk
U.S. DISTRICT COURT



In the Matter of the Search of a Black Apple iPhone, Currently Stored at the Tulsa Police Department Special Investigations Division

)
)
)
)
)

Case No. 23MJ-639-JFJ

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. §5861(d) | Possession of an NFA Firearm Which is Not Registered in the National Firearms Registration and Transfer Record |
| 21 U.S.C. §841(a)(1) | Unlawful Possession of a Controlled Drug with the Intent to Distribute |

The application is based on these facts:
**See Affidavit of SA Ben Nechiporenko, ATF attached hereto.**

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Ben Nechiporenko, ATF
*Printed name and title*

Subscribed and sworn to by phone.

Date: 11/21/23

_____
*Judge's signature*

City and state: Tulsa, Oklahoma

Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of a Black Apple iPhone, Currently Stored at the Tulsa Police Department Special Investigations Division | Case No. _____ |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Ben Nechiporenko, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I have been employed as a Special Agent in Tulsa, Oklahoma since 2022. I am currently assigned to the Dallas Field Division, Tulsa Field Office with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). As a result of my employment with ATF, my duties include, but are not limited to, the

investigation and enforcement of illegal use, possession, and trafficking of firearms, criminal organizations and gangs, arson, and illegal use and possession of explosives.

4. Prior to my tenure as an ATF Special Agent, I was a sworn law enforcement officer employed with the West Fargo Police Department in North Dakota from October 2012 to January 2022. During my employment with the West Fargo Police Department, my primary assignments included: Patrol Officer with the Patrol Division, Detective for the Metro Street Crimes Unit with the Special Investigations Division, Task Force Officer and Team Leader with U.S. Marshals Service Violent Offender and Fugitive Task Force, and Patrol Sergeant with the Patrol Division. My training included over 1,250 hours of Police Officer Standards & Training (POST) approved training hours with an emphasis in gangs and narcotics enforcement. I served nine years with the Army National Guard as a Combat Engineer and received an Honorable Discharge at the rank of Sergeant. I received a Bachelor of Science Degree in Criminal Justice from North Dakota State University in 2011.

5. As part of my duties as an ATF Special Agent, I investigate criminal violations in the Northern District of Oklahoma to include Title 26 U.S.C. § 5861(d) Possession of an NFA Firearm Which is Not Registered in the National Firearms Registration and Transfer Record and Title 21 U.S.C. §841(a)(1) Unlawful Possession of a Controlled Drug with the Intent to Distribute.

6. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained

from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

7. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 26 U.S.C. § 5861(d) Possession of an NFA Firearm Not Registered in the National Firearms Registration and Transfer Record, and Title 21 U.S.C. §841(a)(1) Unlawful Possession of a Controlled Drug with the Intent to Distribute, as described in Attachment B and is recorded on the device described in Attachment A.

### Identification of the Device to be Examined

8. The property to be searched is a Black Apple iPhone, hereinafter the "Device." The Device is currently stored at the Tulsa Police Department Special Investigations Division in Tulsa, Oklahoma under property receipt number BW0912 and listed as item number 24.

9. The applied-for warrant would authorize the forensic examination of the
Device for the purpose of identifying electronically stored data particularly described
in Attachment B.

## Probable Cause

10. In October 2023, Tulsa Police Department Officer William Shanks, assigned
to the Strategic Intervention Unit, received information from a Confidential
Informant (CI) that Daishad Le'Sai Rio LUCAS (XX/XX/1997) possessed a firearm
and had possessed a firearm on more than one occasion. The CI informed Officer
Shanks that LUCAS was residing in the Southern Elms Apartments. The CI stated
LUCAS resides in the southeast building in the complex and LUCAS' apartment is
the southernmost apartment on the second floor of the building. The CI also stated
that LUCAS is a member of the 52nd Street Reb Mob criminal street gang and goes
by the moniker "deuce". The CI stated LUCAS has control of Facebook account
"100034554171145" with vanity name "Jimmie Fallon". The CI identified LUCAS'
booking photo as the individual the CI knows as the individual residing at the
Southern Elms Apartments and observed possessing a firearm on more than one
occasion. The CI had not previously provided information to the Tulsa Police
Department. The CI advised that he/she knows what firearms are, knows what
firearms look like, and knows how firearms function.

11. Officer Shanks conducted a criminal history check of LUCAS using the
Oklahoma Department of Corrections website and the Juvenile Online Tracking

System (JOLTS) which showed LUCAS had a prior felony juvenile adjudication for robbery or attempted with a dangerous weapon (YO-2014-15).

12. Officer Shanks conducted a records search of LUCAS using a law enforcement database which showed LUCAS had an address of 4525 East 31st Street, Apartment #78, Tulsa, Oklahoma inside the Southern Elms Apartments complex. Officer Shanks searched the Tulsa Regional Automated Criminal Information System (TRACIS) which showed LUCAS had a listed address of 4525 East 31st Street, Tulsa, Oklahoma. Officer Shanks located a white Cadillac sport utility vehicle (SUV) with Oklahoma license plate "LCH-557". The vehicle was registered to LUCAS with a listed registered address of 4525 East 31st Street Apartment #78, Tulsa, Oklahoma. Officer Shanks searched the vehicle's registration in FLOCK safety cameras and AXON license plate readers (LPR). The Oklahoma license plate "LCH-557" showed to be currently affixed to a maroon Cadillac sedan.

13. On October 17, 2023, Officer Shanks and Officer Robert Dobbins conducted surveillance at the residence in the afternoon hours. Officers observed the maroon Cadillac sedan with Oklahoma license plate "LCH-577" parked in a parking space in front of building "4525". The maroon Cadillac sedan backed out of the parking space and drove to the front of the apartment management office. A black male matching the physical description and facial characteristics of LUCAS exited the driver's seat of the vehicle. Officer Shanks believed the black male to be LUCAS.

14. On October 18, 2023, Officer Shanks, Officer Dobbins, and Lieutenant Adam Dawson conducted surveillance at the residence. Officer Shanks observed a black

5

male exit the apartment to searched. The black male matched the facial characteristics and physical description of LUCAS. Officer Shanks believed the male to be LUCAS.

15. Officer Shanks discovered an Instagram account "deuce50zz". Officer Shanks believed LUCAS had control of the described Instagram account. Officer Shanks believed the photographs from posts and stories on the Instagram account were photographs of LUCAS. Officer Shanks compared known and recent booking photographs of LUCAS to the photographs posted on the listed Instagram account. Officer Shanks knows from his experience and training that it is common for Instagram account holders to post photographs of themselves in their "stories" and "posts".

16. Officer Shanks discovered a public photograph posted on the "deuce50zz" Instagram account in June 2023. Officer Shanks believed the photograph was a photograph of LUCAS. LUCAS was standing inside what appears to be a residence. The frame of a handgun can be seen protruding from the right side of LUCAS' waistline. A magazine can be seen protruding from the magazine well of the handgun. The slide of the handgun is concealed in LUCAS' pants and is not visible in the photograph. The "deuce50zz" Instagram account has a linked Facebook account. The linked Facebook account is Facebook account "100034554171145" with vanity name "Jimmie Fallon".

17. Officer Shanks viewed public photographs posted on the "100034554171145" Facebook account. Officer Shanks observed a photograph posted to the Facebook

6

account on March 5, 2023. Two individuals are observed in the photograph. Officer Shanks believed one of the individuals to be LUCAS. LUCAS was holding two pistols near his head. On the floor in front of the two individuals, money and an AR style pistol are displayed forming the letters "HK" (hoover killer). Officer Shanks observed several gang related photographs and posts. In several of the photographs, large groups of individuals, including LUCAS, were seen wearing red clothing and displaying gang related hand signs. Officer Shanks was able to recognize several of the individuals in the photographed with LUCAS as certified members of the 52nd Street Red Mob criminal street gang including D.G. and T.M.

18. On October 18, 2023, Officer Shanks applied for a state search warrant for the residence located at 4525 East 31st Street, Apartment #78, Tulsa, Oklahoma. The search warrant was granted by the Honorable Judge Rodney Sparkman.

19. On October 20, 2023, at approximately 959 hours, officers with the Tulsa Police Department Strategic Intervention Unit (SIU) executed a Tulsa County search warrant at 4525 E 1st St Apt 78 in the city and county of Tulsa, Oklahoma. Officer Dobbins knocked on the front door and made four loud and clear announcements "Tulsa Police, search warrant, come to the door". Sergeant Laskey and Sergeant Gallegos were on containment of the apartment. Sgt Laskey notified officers at the front door that someone was throwing firearms out of the east window. Five individuals were located inside the apartment including the resident, LUCAS.

20. During a search of the residence, it was determined that LUCAS resided in the far east bedroom. This was the same bedroom where Sergeant. Laskey and

7

Sergeant Gallegos observed the firearms being thrown. Officers collected three firearms on the patio outside the far east bedroom window. In addition to the three firearms, officers also located 1.3 grams of small blue round pills stamped "M30". Officer Barnhart located .6 grams of small blue round pills stamped "M30" in the central bathroom. In Daishad Lucas' bedroom, Officer Beyerl located .2 grams of small blue round pills stamped "M30", 1.1 grams of a white powder like substance, and $1,000 in U.S. currency.

21. Officers seized numerous items during the search warrant including:

- PPS-43, 7.62x25mm, Serial #KM09687
- Palmetto State Armory, PSAK47, 7.62x39mm, Serial #AKB057238
- American Tactical, Multi Caliber, Serial #MSA100098
- Glock 32, .357 Sig, Serial #BZCU585
- Glock 45, 9mm, Serial #BHZB474
- Pills – Blue, Round, Imprint: M30
- White Powder
- PPS-43 Magazines
- AK-Style Magazines
- Body Armor
- Glock Magazines
- Digital Scale with Residue



22. All individuals denied possessing and/or owning the firearms. Post-Miranda, LUCAS denied living at the apartment or owning the firearms. LUCAS stated he occasionally stayed at the residence, but never in the east bedroom; however, LUCAS stated his DNA would be on the pillowcase in the east bedroom. Officers located numerous forms of indicia for LUCAS in the east bedroom including paperwork, credit cards, pill bottles, mail, medical bills, and LUCAS' birth certificate.

23. Officer Shanks conducted a search incident to arrest of LUCAS' person prior to him being transported to jail. In LUCAS' right front pant pocket, Officer Shanks located a black Apple iPhone with a black case. LUCAS initially denied the cell phone belonged to him and attempted to hand it to another occupant of the apartment. Without manipulating the cell phone, Officer Shanks was able to observe

9

the wallpaper on the phone was a photograph of LUCAS. LUCAS ultimately identified the cell phone as belonging to him. LUCAS allowed Officer Dobbins to manipulate the black Apple iPhone cell phone to obtain phone numbers from the cell phone. LUCAS provided Officer Dobbins the passcode to the cell phone to access and obtain the phone numbers.

24. LUCAS was arrested and booked into David L. Moss Criminal Justice Center for state charges including Possession of Firearm by Adjudicated Delinquent, Trafficking Fentanyl, Possession of Firearm in Commission of Felony, Possession of Drug Proceeds, and Possession of a Short-Barrel Rifle.

25. While processing evidence at a Tulsa Police Department facility, Officer Shanks and I field tested the firearms for operation. The PPS-43 (TPD Item #1) field-tested as open bolt with full-automatic function. The PPS-43 was equipped with a foldable stock and a barrel with a length of approximately eleven (10 5/8) inches including the muzzle device. The Palmetto State Armory PSAK47 (TPD Item #2) field-tested as closed bolt with full-automatic function.

26. Officer Shanks submitted the small blue round pills stamped "M30", the white powder like substance, firearms, U.S. Currency, and black Apple iPhone cell phone to the Tulsa Police Department Property Room as evidence under property receipt# BW0912.

27. On October 20, 2023, I submitted a National Firearms Registration and Transfer Record (NFRTR) search request for the PPS-43, 7.62x25mm, Serial #KM-09687, Palmetto State Armory, PSAK47, 7.62x39mm, Serial #AKB057238, and

LUCAS. On October 24, 2023, I received an email from ATF Firearms and Explosives Specialist Damon Wright which included an NFRTR Search Certificate. The certificate indicated no records were found for either firearm or LUCAS.

28. On October 26, 2023, I received a copy of Washington County Sheriff's Office report #2023-3842. The report indicated the Palmetto State Armory PSA47, 7.62x39mm, Serial #AKB057238 was stolen on or about June 18, 2023. The owner of the firearm was listed as W.A.

29. On November 3, 2023, the Tulsa Police Department Forensic Laboratory conducted a drug chemistry analysis on the small round blue pills stamped "M30" and the white powder like substance. The small blue round pills stamped "M30" were determined to be Fentanyl. The white powder like substance was determined to be Cocaine. The Fentanyl had a total net weight of approximately 2.2 grams which is more than double the statutorily definition of trafficking. The Cocaine had an approximate net weight of 1.1 grams.

30. On November 9, 2023, ATF Resident Agent in Charge (RAC) Brett Williams and I examined the Palmetto State Armory, PSAK47, 7.62x39mm, Serial #AKB057238 and Polish PPS-43, Serial #KM-09687.

31. The Polish PPS-43, Serial #KM-09687 had an overall length of 32 ¼" with the folding stock extended and approximately 25" with the stock folded. The barrel length was approximately 10 5/8" including the attached muzzle device. Title 18 U.S.C. 921(a)(a)(8) defines "Short-Barreled Rifle" as a rifle having one or more barrels less than 16" in length and any weapon made from a rifle (whether by

11

alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than 26".



32. The Polish PPS-43, Serial #KM-09687 was field-tested for function. The firearm presumptively tested positive for full-automatic function. The safety had two positions and the firearm operated from the open bolt.

33. The Palmetto State Armory, PSAK47, 7.62x39mm, Serial #AKB057238 was field-tested for function. The firearm presumptively tested positive for both full-automatic function and semi-automatic function, depending on the selector switch position. The firearm's safety selector had three (3) positions which field-tested as "Safe" (Upper Position), "Automatic" (Middle Position), and "Semi-Automatic" (Lower Position). The firearm operated from the closed bolt.



34. Title 26 U.S.C. § 5845 defines "firearm" as (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in Title 18 U.S.C. §921); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

35. Title 26 U.S.C. § 5845 defines "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The

term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. There is probable cause to believe that two firearms officers recovered under the east bedroom window meet the definition of machinegun, the PPS-43, Serial #KM09687, and, the Palmetto State Armory, PSAK47, Serial #AKB057238.

## Technical Terms

36. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and

storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on

15

the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the

16

Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   f.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

37. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online https://www.apple.com/iphone/, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### Electronic Storage and Forensic Analysis

38. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have

17

been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

39. I know that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. I know that in many cases cellular telephones maintain photographs of illegal activities to include evidence of illegal possession of firearms, the illegal purchase or acquisition of firearms and the illegal modification of firearms. These photos are sometimes stored in their cellular phones and often are transmitted or sent from one electronic media device to another. I also know that cellular phones may also contain notes regarding potential illegal acts that are recorded by the subject who possesses the electronics. Furthermore, I know that text messages, emails are often used by two or more persons to communicate information regarding the illegal possession or acquisition of firearms and/or violent crime and other illegal activities, between principals and co-conspirators of those crimes.

40. I know that cellular telephones are utilized by most individuals in the United States and have become a staple of communication between individuals using text messaging, visual and audible communications (telephone calls and FaceTime type communications) as well as applications like "Facebook Messenger". Additionally, individuals utilize their cellular devices to take pictures, keep notes, as a GPS (global positioning System) device, and even to conduct illicit or illegal activity. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done using Cloud storage and direct transfer

18

conducted at the time of purchase or by the individual themselves. Individuals utilize

this method as not to lose data that is stored on the phone such as contacts, photos,

notes, and other important information to the individual. This data includes contacts

used to conduct illegal activities to include construction or assembly of illegal

explosive devices.

41. Based on my training and experience, I know that individuals involved in

criminal activity often use cell phones and other electronic devices to further their

trade by conducting business on them via text messages and phone calls. Individuals

involved in violent crime also trade images of firearms, explosive devices, or

materials used in the construction of explosive devices and/or items from their illegal

activity on their phone as well. I also know from training and experience that:

    a. Cellular telephones are almost always used by persons engaging in criminal

       activities as a means of communication. They will communicate by verbal

       conversations, digital text messaging, and/or sending photographs to one

       another.

    b. Persons engaged in criminal activities carry and possess firearms during

       and in relation to and in furtherance of crimes. They also photograph

       themselves and others with controlled substances, firearms, and money

       proceeds. Such photographs are often kept in digital form on cell phones.

    c. Cellular telephones may also contain notes, emails, and text messages

       regarding money laundering, or inquiries for firearms by the subject who

       possesses the cellular telephone.

d.  Text messages and e-mails are often used by two or more persons to communicate information regarding illegal activities between two telephones or between one telephone and a personal computer. This information can include directions for deliveries, stash locations, prices, cell phone contact numbers, and instructions.

e.  Cellular telephones often contain stored phone numbers and contact information of individuals that conduct business with other co-conspirators that possess the cellular telephone.

f.  Persons prohibited from legally possessing firearms or frequently do not obtain them by a traditional means (such as through licensed dealers which require background checks and paperwork/documentation) and instead use third-party suppliers. Many of these third-party suppliers are online marketplaces such as Armslist (www.armslist.com) or Gun Broker (www.gunbroker.com), while other third-party transactions take place through the communication between two individuals in a private sale transaction, which takes place outside of the restrictions of the federal government that would at minimum document the sale or transfer.

g.  An additional avenue prohibited persons frequently use to obtain firearms is through the straw purchase of a firearm which is done when a non-prohibited person buys a firearm through traditional means for a prohibited person, at the direction of the non-prohibited person to include style, make, model, and caliber and sometimes even the individual to buy from.

20

Frequently, this communication between the non-prohibited and prohibited person takes place via cellular device to include text messages with both instructions for purchase and pictures of firearms or explosive devices to be obtained or sold.

h. In summary, prohibited persons frequently use cellular phones to obtain their illegally possessed firearms whether it be through third party web sites, private purchase, or through straw purchase.

42. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to

draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

43. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

44. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is

reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

45. *Methods of examination.* In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the Device. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

## Conclusion

46. Based on the information above, I submit that there is probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

47. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Ben Nechiporenko
Special Agent
Bureau of Alcohol, Tobacco, Firearms
& Explosives

Subscribed and sworn to by phone on November 21st, 2023.

JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE

24

## ATTACHMENT A

### Property to be Searched

The property to be searched is a black Apple iPhone, hereinafter the "Device."
The Device is currently located at the Tulsa Police Department Special
Investigations Division in Tulsa, Oklahoma, stored under property receipt number
BW0912 and listed as item number 24.

This warrant authorizes the forensic examination of the Device for the purpose of
identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

### Particular Things to be Seized

All records on the Device described in Attachment A that relate to Title 26

U.S.C. § 5861(d) Possession of an NFA Firearm Which is Not Registered in the

National Firearms Registration and Transfer Record, and Title 21 U.S.C. §841(a)(1)

Unlawful Possession of a Controlled Drug with the Intent to Distribute including:

1. Records relating to communication with others as to the criminal offense(s)

   listed above; including incoming and outgoing voice messages; text messages;

   emails; multimedia messages; applications that serve to allow parties to

   communicate; all call logs; secondary phone number accounts, including those

   derived from Skype, Line 2, Google Voice, and other applications that can

   assign roaming phone numbers; and other Internet-based communication

   media;

2. Records relating to documentation or memorialization of the criminal

   offense(s) listed above, including voice memos, photographs, videos, and other

   audio and video media, including Exchangeable Image File ("EXIF") data

   and any other metadata associated with those photos and videos, including

   device information, geotagging information, and information about the

   creation date of the audio and video media;

3. Records relating to the planning and execution of the criminal offense(s)

   above, including Internet activity, firewall logs, caches, browser history, and

   cookies, "bookmarked" or "favorite" web pages, search terms that the user

entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

4. Records relating to the modification of firearms, including Internet activity, firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

5. Application data relating to the criminal offense(s) above;

6. Threating communications related to the criminal offense(s) listed above;

7. Information related to co-conspirators, stash house locations used to store firearms, admissions of criminal offense(s) related to the offense(s) listed above and information related to the acquisition or attempted acquisition of other firearms or ammunition in the future or already completed and related identifying information;

8. Any information related to sources of acquiring, components, firearms, co-conspirators, aiders and abettors of information related to the illegal possession of firearms as well as others (including names, addresses, phone numbers, or any other identifying information); information relating to instructions for transportation, obtaining and storing illegally possessed

firearms, and information relating to means of transportation for illegally possessed firearms;

9. All information, data, and photographs related to the possession, acquisition, and use of components, and/or firearms;

10. All bank records, checks, credit card bills, account information, and other financial records.

11. Evidence of user attribution showing who used or owned the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history;

12. All records and information related to the geolocation of the Device(s) from July 20, 2023 to October 20, 2023;

13. All records and information related to the coordination, agreement, collaboration, and concerted effort of and with others to violate the criminal statutes listed above.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3